[Crim. No. 24733. Second Dist., Div. Five. Aug. 30, 1974.]

ROBERT L. CHARBONNEAU, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent.

**COUNSEL**

Harney, Charbonneau & Bambic and David M. Harney for Petitioner.

John H. Larson, County Counsel, and Dwight V. Nelsen, Deputy County Counsel, for Respondent.

## OPINION

**STEPHENS, Acting P. J.**—In this proceeding in prohibition,[1] petitioner Robert L. Charbonneau, an attorney, seeks to set aside an order of the Los Angeles Superior Court adjudging him in contempt of court and sentencing him to jail for two days.

In brief, petitioner represented the plaintiffs in two (consolidated) cases. The basis for the claimed liability of defendants was an alleged defective brake system in a 1966 Lincoln Continental automobile in which plaintiffs were riding at the time of the accident which caused their injuries. One of the claimed defects was that the vehicle was manufactured with a single master cylinder in the brake system instead of a dual master cylinder.

### The Order and Judgment of Contempt

The order and judgment of contempt filed on December 14, 1973, in pertinent part, reads as follows:

"Pursuant to motions in limine made by the defendants at the beginning of and during trial, pursuant to Evidence Code § 352, and based on all the grounds therein enumerated, the Court made certain orders.

"On August 6, 1973, the Court made the following order: 'That pending a further hearing or conference between counsel and the Court out of the presence of the jury after an appropriate offer of proof, there will be no mention made in this trial of the fact of a 1965 [recall] campaign of a [recall] campaign as to the 1965 Lincoln Continental, a campaign as to the 1966 Lincoln Limousine or the fact that the 1967 Lincoln Continental was manufactured with a dual master cylinder [brake] system as distinguished from a master cylinder system [which was manufactured on 1966 Lincoln Continentals].' (Brackets original.)

"Upon making the above Order, Robert L. Charbonneau indicated that he understood said Order. The Court further explained its Order to Robert L. Charbonneau by stating: '. . . the fact that the dual master cylinders were placed on '67 Lincoln Continentals—those facts are the facts which may not be brought to the attention of the jury until further order of the Court.'

---

[1]Prohibition is a proper means of considering petitioner's claims that the court lacked jurisdiction to adjudicate him in contempt. (*Ketscher* v. *Superior Court*, 9 Cal. App.3d 601, 604 [88 Cal.Rptr. 357].) Petitioner also sought a writ of habeas corpus or a writ of certiorari, either of which would be proper. (*In re Buckley*, 10 Cal.3d 237, 259 [110 Cal.Rptr. 121, 514 P.2d 1201].)

"Later, on August 6, 1973, the Court expanded its Order in limine by stating to said Robert L. Charbonneau as follows: '. . . The Court is disposed to expand its order in limine—its granting of the motion in limine that the defendant made to preclude not only reference to the [recall] campaign involving '65 and '66 Continental limousines and also the changes made on the '67 models but to also include any reference to any defects or to any complaints of any other model years than '66 pending further offer of proof and a showing of relevance insofar as the '66 model involved in this case is concerned.[2] [Text brackets are original.]

"Prior to October 17, 1973 Robert L. Charbonneau brought to the attention of the Court the existence of a federal regulation requiring that all cars manufactured in the United States for the 1967 model year, and for all years thereafter, be built with a dual master cylinder brake system.

"On October 17, 1973, Robert L. Charbonneau conducted a cross examination of one Paul Benjamin Shutt. Robert L. Charbonneau asked Mr. Shutt the following question: "How many cars had dual master cylinders in 1967?" The Court then informed Robert L. Charbonneau that he was getting very dangerously close to the Court's order. Robert Charbonneau continued the question by asking: Do you know?" An objection to the question was sustained. Thereupon, Robert Charbonneau asked the witness as to whether he knew how many cars that are sold in the United States have dual master cylinders." (In view of the fact that the quoted questions were the basis for the judgment of contempt, we digress from our quotation of the judgment to set forth those questions in their context (as taken from the reporter's transcript), and underline them for ready identification):

"CROSS EXAMINATION

"BY MR. CHARBONNEAU: . . . Q. Now in 1966, Cadillac was still carrying the dual master cylinder; is that correct? A. That's correct. Q. And all of the American Motors cars were still carrying the dual master cylinder. A. That is right. Q. Now do you know—you have indicated that

---

2The transcript reflects that at the time of the order, this colloquy ensued:
"THE COURT: I thought I worded this rather carefully. It is the fact of a campaign that may not be gone into.
"MR. CHARBONNEAU: All right.
"THE COURT: Certainly the fact that historically cars had this type of brakes, and the development of the art is, I'd say, a very strong part of your case, a necessary part of your case—but it is the fact of a campaign. I understood that to be the motion. The fact of a campaign as to '65 Lincolns, as to '66 Lincoln limousines, and the fact that dual master cylinders were placed on '67 Lincoln Continentals—those facts are the facts which may not be brought to the attention of the jury until further order of the court. . . ."

in 1966 a total of 9—is this nine million? A. Yes. Q. 925,249 [*sic*] cars were sold in the American market? A. That's in the United States. Q. And that would be cars and trucks? A. Cars and light trucks. Q. Sold by American manufacturing companies? A. Yes. Q. And you indicated out of that number, 9,427,177 cars and trucks had a single master cylinder, and 498,072 had a dual master cylinder. A. That's correct. I hope those figures add up. They're supposed to. Q. *How many cars had dual master cylinders in 1967?* [DEFENSE COUNSEL]: I'm going to object to that. THE COURT: You're getting very dangerously close to the Court's order. Q. BY MR. CHARBONNEAU: *Do you know?* THE COURT: Is that an objection? [DEFENSE COUNSEL]: Yes; I object on the grounds it's irrelevant and immaterial. THE COURT: Sustained. MR. CHARBONNEAU: He's put those figures on the board, your Honor. THE COURT: For '66, he has. Q. BY MR. CHARBONNEAU: *Do you know what those figures are today?* [DEFENSE COUNSEL]: Same objection. THE COURT: Do you know what the '66 figures are today? MR. CHARBONNEAU: No, your Honor. *Do you know how many cars that are sold in the United States have dual master cylinders.* THE COURT: We'd better have a recess here, counsel. The court has made an order in this regard. MR. CHARBONNEAU: I'll withdraw my question. THE COURT: All right. [DEFENSE COUNSEL]: I think we should have a recess. I'd like to see if we could go into chambers[3] for a moment." THE COURT: All right, we'll have a recess. . ." Resuming our quotation of the Judgment and Order of Contempt: "Immediately thereafter on October 17, 1973, out of the presence of the jury, the Court gave Robert Charbonneau the opportunity to justify his conduct with respect to the above-described events. Robert Charbonneau explained that he asked the question for purposes of impeachment due to the line of questioning developed by a defense attorney. (Exhibit B, pp. 6-8).

"The Court thereupon stated that it had been the order of the Court that before there was any line of questioning with respect to dual master cylinders on 1967 Lincoln Continental automobiles, that it would require a further order of the Court, after a hearing and an offer of proof as to what was intended to be shown. (Exhibit B, pp. 8-9).

"Thereupon on October 17, 1973, the Court found Robert Charbonneau in contempt of Court because he violated the Court's order to first submit the line of questioning concerning dual master cylinders for 1967 Lincoln Continental automobiles to the Court so that the Court would have an opportunity to consider it before the jury heard the question. Further proceedings in that regard were deferred until the conclusion of the trial. (Exhibit B, p. 9).

---

[3]It was at this meeting in chambers that petitioner was held in contempt of court.

"The Court having reviewed and considered the evidence offered by Robert Charbonneau and having considered the matters personally observed and known to the Court and those matters contained in the Court files of the cases [being tried], and of which this Court takes judicial notice, makes its findings of fact as follows:[4]

". . . . . . . . . . . . . . . . . . . . .

"2. . . . Robert Charbonneau on cross-examination . . . asked the question: 'How many cars had dual master cylinders in 1967?' The Court sustained an objection to that question. Robert Charbonneau did not make an offer of proof or ask for a further hearing or conference before asking about dual master cylinders on 1967 automobiles including Lincoln Continentals.

"3. Robert Charbonneau knew that the only answers possible to his questions were that all cars, including Lincoln Continental automobiles, had dual master cylinders on the 1967 models and all years thereafter pursuant to and because of federal requirements.

". . . . . . . . . . . . . . . . . . . . .

"7. That Mr. Charbonneau's explanation for his willful failure to comply with the Court's order on October 17, 1973 is not sufficient to excuse such failure.

". . . . . . . . . . . . . . . . . . . . ."

There are no recitals in the order and judgment of contempt of either "disorderly, contemptuous, or insolent behavior" (Code Civ. Proc., § 1209, subd. 1) or "boisterous conduct, or violent disturbance, tending to interrupt the due course of a trial." (Code Civ. Proc., § 1209, subd. 2.) The jurisdictional foundation for the subject order of contempt must therefore lie in one or more acts of "disobedience of any lawful . . . order . . . of the court." (Code Civ. Proc., § 1209, subd. 5; *Cooper* v. *Superior Court,* 55 Cal.2d 291, 297 [10 Cal.Rptr. 842, 359 P.2d 274].)

In our original opinion filed in this matter (May 9, 1974, 2d Civ. 24733), we construed the instant order of contempt to be one under section 1209, subdivision 5 and held that the failure of the trial court to reduce its orders in limine to a writing filed with the clerk or entered in the court's minutes necessitated that the judgment of contempt be reversed. (See *Ketscher* v. *Superior Court,* 9 Cal.App.3d 601, 604 [88 Cal.Rptr. 357].) We were led

---

[4]We set forth only those findings which articulate the court's rationale in finding petitioner in contempt of court.

to this resolution by the absence of any showing in the record before this court at that time indicating compliance with *Ketscher*. In his petition, petitioner had stated that to "[his] knowledge, these oral orders [in limine] were not entered into the minutes of the court, and were not otherwise reduced to writing, except for a Reporter's Transcript thereof, prepared after petitioner was initially held in contempt for violation thereof. The trial court's contempt adjudication was based entirely on oral orders, and not on any minute order or written order." The brief was authored by David M. Harney. Counsel for respondent court apparently felt confident in accepting petitioner's representations at their face value, and he represented to the court, albeit less forcefully than petitioner, that the oral orders were not reduced to a writing or entered in the court's minutes.[5]

Appellate courts must to a large extent rely upon the statements of the parties as to the state of the record where, as here, the full record has not been brought up, yet the parties by their statements indicated that the record was complete. Appellate courts cannot be expected to search for a part of the record which the parties have either directly or by intimation represented does not exist. (Cf. *Scala* v. *Jerry Witt & Sons, Inc.*, 3 Cal.3d 359, 367, fn. 4 [90 Cal.Rptr. 592, 475 P.2d 864].)

Subsequent to the rendering of our initial decision, respondent petitioned this court for a rehearing (Cal. Rules of Court, rule 27(a)) on the ground that the "orders in question *were* reduced to a writing and entered in the clerk's minutes." We granted the petition (*San Francisco* v. *Pacific Bank*, 89 Cal. 23, 25 [26 P. 615, 835]; 6 Witkin, Cal. Procedure, Appeal, §§ 597-598) and ordered the record augmented to include the court's minutes in question. (Cal. Rules of Court, rule 12; *Western Bd. of Adjusters, Inc.* v. *Covina Pub., Inc.*, 9 Cal.App.3d 659 [88 Cal.Rptr. 293]; *Horton* v. *City of Beverly Hills*, 261 Cal.App.2d 306, 307 [67 Cal.Rptr. 759].)

■ Reaching the merits of the instant controversy, we are convinced that the trial court's order of contempt is valid. The orders in limine specifically foreclosed to either party the right to mention the fact that the 1967 Lincoln Continental was manufactured with a dual master cylinder system, as distinguished from the single master cylinder system used on the 1966 Lincoln Continental. Prior to the day that the contempt citation was issued, petitioner represented to the court that the Department of Transportation had issued a regulation, effective January 1, 1967, that required

---

[5]In answering the contention raised by petitioner, respondent's brief stated: "Petitioner's act in the instant case constituted contempt of court even though the ruling on the motion in limine was not reduced to a writing."

all cars sold as new after that date to be equipped with a dual master cylinder system.[6]

We have searched in vain for any directive by the Department of Transportation relative to the issue of dual master cylinders (brake integrity) which was to take effect on January 1, 1967. Under the National Traffic and Motor Vehicle Safety Act of 1966 (15 U.S.C. §§ 1331-1431), Congress authorized the Secretary of the Department of Transportation to establish by order appropriate federal motor vehicle safety standards. (15 U.S.C. § 1392.) Pursuant to this mandate, the Secretary issued initial standards relative to brake system integrity which became effective January 1, 1968. (See 32 Fed. Reg. 2408, now contained 49 C.F.R. § 571.105.) There were federal regulations existing on January 1, 1967 which pertained to

[6]At argument on rehearing new counsel, Anthony Murray, argued that nowhere in the reporter's transcript before us did Mr. Charbonneau represent that there was such a regulation. Even the partial record brought up by petitioner did not support that statement.

On December 14, 1973, at the hearing re contempt, the record (in part) shows:

"BY THE COURT: Is it your testimony, Mr. Charbonneau, that at no time prior to October 17, 1973, did you represent to the court that the federal regulations that pertained to the manufacture of American automobiles starting in the year 1967, the model year 1967—that such regulations required the installation of dual master cylinder systems on the braking systems of such cars?

"A. Well, I did, either in writing in a—I don't think it was in a brief—but I did make a representation to the court that the federal government required Ford Motor Company to change to the dual master cylinder system in its vehicles in the year 1967. *I may also have represented to the court that this requirement also was applicable to other manufacturing companies.* I don't recall that specifically at this time without referring to the transcript in that regard. [Italics added.] I recall no representation made pertaining to light trucks. I don't think that was ever brought up, your Honor. I am aware that the Ford Motor Company—and by way of background, I obtained that information, your Honor, in a deposition which was taken in Detroit, I believe of Mr. Roussey, in which he testified that the reason Ford Motor Company went to the dual master cylinder in '67 on its vehicles was pursuant to federal law, and I believe that's where I obtained my information. If I made any representation that other manufacturing companies also went to a dual master cylinder pursuant to federal law in '67, I don't know that for a fact, whether I made that representation. I don't recall at this time. But I did represent that to the court as to Ford. As to light trucks, I don't recall making any mention of that.

"You are telling me your representation to the court was the federal law applied only to the Lincoln Continental Company or the Ford Motor Company?

"A. No, no, that's not what I am saying. I do believe—I do recall representing to the court, I believe based on the deposition of a Ford engineer, Mr. Roussey or perhaps some other witness, that the federal government by federal law required Ford Motor Company in its vehicles to go to dual master cylinder in '67. I do recall making that representation."

In the light of the quoted record, the finding that Mr. Charbonneau had made the representation is amply supported. Just what the full record would divulge, we cannot say, but certainly if the writings referred to by Mr. Charbonneau sustained his contention, it is reasonable to assume he would have designated them as part of the record here.

brake system integrity on passenger cars, but these were limited to certain automobiles purchased by the federal government. (See 30 Fed. Reg. 8319.) Petitioner's representation to the court appears to be erroneous. Had the witness been allowed to answer the question, it is not altogether certain that the answer the trial court expected—that *all* cars manufactured in 1967 were equipped with dual master brake cylinders—would have been received. Thus, in the absence of a directive covering 1967 model year cars, it cannot be determined with reasonable certainty that the response sought would have included 1967 Lincoln Continentals. Consequently, under normal circumstances, the order of contempt issued by the trial court would not be valid. (*Little* v. *Superior Court,* 260 Cal.App.2d 311, 316-319 [67 Cal.Rptr. 77]; *Thorne* v. *Superior Court,* 237 Cal.App.2d 249, 252-253 [46 Cal.Rptr. 749].) Here, however, we are of the opinion that even though the regulation did not exist, the order of contempt is valid. By his representations to the trial court, petitioner evidenced the fact that *he* believed that *all* cars manufactured in the 1967 model year were equipped with dual master brake cylinders. Thus when he asked the question on which the court based its order of contempt, his intent was to elicit a response which was specifically foreclosed to him by the court's order. Where an attorney engages in conduct which intentionally seeks to effect a violation of a valid court order, such conduct warrants an adjudication of contempt. (See *In re Burns,* 161 Cal.App.2d 137, 141 [326 P.2d 617].)

Petitioner argues that the intent of his questions and the response sought is misstated; that the question was not "How many 1967 model year cars had dual master cylinders;" but "How many cars had dual master cylinders in 1967?" Thus, according to petitioner, the question was, "How many cars of any model year (before and after the 1967 model year) had dual master cylinders at some time in calendar year 1967." However, when the question on which the contempt order is based is considered in its context, the intent is clear. We again quote from the record (questions by petitioner): "Q. Now in 1966, Cadillac was still carrying the dual master cylinder; is that correct? A. That's correct. Q. And all of the American Motors cars were still carrying the dual master cylinder. A. That is right. Q. Now do you know—you have indicated that in 1966 a total of 9—is this nine million? A. Yes. Q. 925,249 cars were sold in the American market? A. That's in the United States. Q. And that would be cars and trucks? A. Cars and light trucks. Q. Sold by American manufacturing companies? A. Yes. Q. And you indicated out of that number, 9,427,177 cars and trucks had a single master cylinder, and 498,072 had a dual master cylinder? A. That's correct. I hope those figures add up. They're supposed to."

Immediately after asking the witness about the proportion of cars manu-

factured in the 1966 model year which had single master cylinders, as opposed to dual master cylinders, petitioner asked the witness, "How many cars had dual master cylinders in 1967?" In the total context of the questions asked and the responses thereto, petitioner clearly sought to establish that *all* 1967 model year cars were built with dual master brake cylinders. This is the natural inference to be drawn from the question.

Contrary to petitioner's claims, the court's order was not vague or ambiguous. The order was specific—petitioner was not to go into the question of model changes on the 1967 Lincoln Continentals. Petitioner clearly violated this directive.

Petitioner claims that his line of inquiry was necessitated by the questions asked by defense counsel and the witness' answers thereto. Whether or not petitioner's claim is true is immaterial. The questions asked by the defense and the answers elicited did not necessitate a violation of the court's order when petitioner sought to "impeach" the witness. The trial court order which petitioner violated was not close-ended. It did allow counsel to move that it be modified upon an appropriate showing. Thus we may assume that the trial court would have modified its ruling so as to correct any imbalance which otherwise may have been perpetuated by the order. We note, however, that petitioner never sought relief from the court's order prior to engaging in the acts which led to the contempt citations. While a counsel has every right to protest rulings which he believes to be erroneous, he has no right to willfully disobey with impunity a valid order of the court. (*Gallagher* v. *Municipal Court,* 31 Cal.2d 784, 788 [192 P.2d 905].)

The order to show cause is discharged, the peremptory writ is denied, and the stay of execution of sentence heretofore issued by this court is terminated.

Ashby, J., and Hastings, J., concurred.

Petitions for a rehearing were denied September 12 and 17, 1974, and petitioner's application for a hearing by the Supreme Court was denied November 13, 1974. Tobriner, J., and Mosk, J., were of the opinion that the application should be granted.