[Civ. No. 18575. Third Dist. Oct. 25, 1979.]

JIM K. LISTER, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent.

COUNSEL

David P. Simmons for Petitioner.

L. B. Elam, County Counsel, and Thomas A. Darling, Deputy County Counsel, for Respondent.

OPINION

**PUGLIA, P. J.**—In this proceeding for a writ of prohibition, petitioner, Jim K. Lister, seeks to prohibit enforcement of a Sacramento Superior Court order adjudging him in criminal contempt and imposing two days' imprisonment and a $100 fine. The court found the manner in which petitioner responded to two official questionnaires designed to

elicit his eligibility and availability for jury service constituted "abuse of the process or proceedings of the court," "disobedience of [a] lawful ...order or process of the court," and "unlawful interference with the process or proceedings" of the court within the meaning of Code of Civil Procedure section 1209, subdivisions 4, 5, and 8. (Succeeding statutory references are to the Code of Civil Procedure unless otherwise indicated.) Section 1209 denominates as contempt several specific "acts or omissions in respect to a court of justice, or proceedings therein,..." ██ The decisive question on review is whether the jury questionnaire as utilized here constitutes an "order," "process" or "proceedings" of the court within the meaning of section 1209. We hold that it does not and accordingly restrain the trial court from enforcing its contempt judgment.

The Sacramento County Jury Commissioner is authorized to prepare lists of qualified prospective jurors who may be summoned for jury duty (§ 204a); the commissioner is under the direct supervision of the presiding judge of the superior court. In the regular course of business, the commissioner mailed petitioner a questionnaire and cover letter requesting his "full cooperation" in answering all questions regarding jury qualification, exemption, and excuse.

Petitioner filled out the questionnaire in crayon, leaving some questions unanswered; the response to other questions was impertinent or flippant. For example, to questions inquiring of his occupation and the ages of his minor children, petitioner responded, "none of your business." To a question regarding his citizenship, he answered: "...white, middle class." Petitioner claimed exemption from jury service on the basis of "Incompetent judges, bleeding heart judges, irresponsible judges, an adversary system which favors the accused and neglect[s] the rights of victims."

Accompanying the questionnaire was a letter from petitioner addressed "to who[m]ever sent this trash in the mail." The letter was critical of the "justice meted out" by judges in Sacramento and suggested that the questionnaire be sent instead to some other "property holder" who has had, or is presently, burning with some desire to sit in judgment in the same court with the creeps, the creep's defense and the creep who ultimately decides to dismiss charges against the creep-in-

question (accused).'"[1] The letter concludes: "So keep this crap out of my mail box or I'll see the post office about you violating my rights against junk mail. Hope you can read crayon. Can you write crayon?—Do you understand crayon?—"

Deeming petitioner's answers unresponsive, the superior court administrator, at the direction of the presiding judge, sent him a second questionnaire. In an accompanying letter, the court administrator pointed out the official nature of the communication, the mandatory jury obligation of every citizen, and the necessity of petitioner's completing and returning the questionnaire. The letter also emphasized that failure to respond appropriately to the second questionnaire would result in an order to show cause why petitioner should not be held in contempt of court.

Although petitioner completely filled out the second questionnaire, his answers to certain questions were flippant, impertinent, or unresponsive. For example, petitioner inconsistently indicated his marital status as "Married," "Single," "Divorced" and "Other," without further explanation of the latter category. Petitioner did answer that his occupation was police officer; however, even though peace officers are exempt from jury service (§ 202.5), petitioner's stated reason for claiming exception was: "Anyone who is on trial is obviously guilty of something or else. He/she would not be in court. The officers who obtained info, made a report, arrested a suspect obviously had reason to act. The accused must have committed some type of crime to initiate the process."[2] At the end of an attachment elaborating on his reasons for claiming excuse from jury service, petitioner threatened: "I answered all questions and if I'm chosen for a jury I'll bring copies of this form for distribution to any defense attorney who may be handling a case in any jury I may serve in for his own enlightenment."

The court administrator, considering petitioner's entire series of communications an indirect contempt of court, executed and filed a declaration in support of an order to show cause why petitioner should not be held in contempt. The order issued, and a hearing thereon was held before the presiding judge of the superior court. The court ad-

---

[1]We are struck by the obvious parallel between petitioner's crudely drawn scenario and the criminal contempt proceedings below in respect to which, with the same effect as a dismissal of the charge, we restrain the trial court from enforcing the judgment of contempt against the "accused."

[2]Petitioner is in fact a Sacramento City police officer.

judged plaintiff in contempt, sentenced him to jail for two days, and fined him $100; the sentence was suspended and enforcement of the order stayed pending review.

On May 3, 1979, we granted an alternative writ of prohibition to review the validity of the contempt order. A writ of prohibition is an appropriate vehicle for determining whether a lower court has exceeded its jurisdiction by imposing an invalid contempt order. (*People* v. *Superior Court* (1972) 28 Cal.App.3d 600, 606 [104 Cal.Rptr. 876]; *Charbonneau* v. *Superior Court* (1974) 42 Cal.App.3d 505, 507, fn. 1 [116 Cal.Rptr. 153].)

█ We dismiss as untenable the contention that the letter from the court administrator accompanying the questionnaire constitutes an "order" of the court under section 1209. None of those documents was filed, nor was an order of court entered in the minutes. (§ 1003; *Ketscher* v. *Superior Court* (1970) 9 Cal.App.3d 601, 604 [88 Cal.Rptr. 357].)

Respondent court asserts, however, that "...the sending of the jury question[n]aires...and the letter from the Court Administrator...were all part of the process or proceedings utilized by the respondent Court for the purpose of carrying out mandatory duties to inquire into the qualifications of prospective jurors and to select and summon persons for jury duty...."

█ A fundamental rule of statutory interpretation requires that statutes be construed according to their plain meaning, absent persuasive evidence of a contrary legislative intent. (See *People* v. *Koester* (1975) 53 Cal.App.3d 631, 641 [126 Cal.Rptr. 73].)

█ In its most comprehensive sense, the term "process" is synonymous with "proceeding" and embraces the entire proceedings in an action from beginning to end. (*Stearns* v. *State* (1909) 23 Okla. 462 [100 P. 909, 914]; *State* v. *District Court of Second Judicial Dist.* (1941) 45 N.M. 119 [112 P.2d 506, 509]; *State* v. *Sullivan* (1944) 245 Wis. 180 [13 N.W.2d 550, 555]; *Roddy* v. *Fitzgerald's Estate* (1944) 113 Vt. 472 [35 A. 2d 668, 670]; *McKenna* v. *Cooper* (1909) 79 Kan. 847 [101 P. 662]; *Wolf* v. *McKinley* (1896) 65 Minn. 156, [68 N.W. 2, 3]; *Gollsbitsch* v. *Ranibon* (1892) 84 Iowa 567 [51 N.W. 48, 49].)

■ The word "proceeding" or "proceedings" in its general sense refers to the form and manner of conducting judicial business before a court or judicial officer. (*Zangerle* v. *Evatt* (1942) 139 Ohio St. 563 [41 N.E.2d 369, 372]; *Lane County* v. *Bristow* (1946) 179 Ore. 653 [173 P.2d 954, 958-959]; *Mellen* v. *Knotts* (1954) 125 Ind.App. 113 [119 N.E.2d 20, 23].) It may also refer to a mere procedural step that is part of the larger action or special proceeding. (*Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 367 [110 Cal.Rptr. 353, 515 P.2d 297].)

Apart from its technical signification as a word of art in legal parlance, the term "proceeding" or "proceedings" undoubtedly has other more common meanings depending upon the context in which it appears and the subject to which it relates (see *Zangerle* v. *Evatt, supra,* 139 Ohio St. 563 [41 N.E.2d at p. 372]). However, we are satisfied that the term as it appears in section 1209 is used in its technical legal sense and refers to something done or to be done in a court of justice or before a judicial officer. Accordingly, the dispatch by administrative functionaries of the court to plaintiff of jury questionnaires and related correspondence does not constitute "proceedings" of the court within the meaning of section 1209.

Our research has disclosed only one case close on its facts and that decision supports the view which we have adopted. In *Statter* v. *United States* (9th Cir. 1933) 66 F.2d 819, the district court judge was required by statute to approve the expenditure of funds for incidental expenses incurred by certain officers such as the marshal. Replying to the judge's written communication relative to such expenditures, the marshall sent a letter to the judge containing "disrespectful language." He was adjudged in contempt under a statute which, like section 1209, defined as contempt certain specific "acts or omissions, in respect to a court of justice or proceedings therein..." Among the acts so denominated for which the marshal was found in contempt was, "Any other unlawful interference with the process or proceedings of the court," a provision almost precisely identical to subdivision 8 of section 1209. Reversing the judgment of contempt, the federal court of appeals held that the mere approval by a judge of court expenditures unrelated to specific litigation (to which written approval the marshal's disrespectful letter related) does not constitute a proceeding within the contempt statute. Acknowledging "that a few courts have construed the term 'proceedings' to include almost any act performed by a court, however ministerial it might be," the court of appeals nevertheless refused to

apply that "strained, and even fanciful, conception of the term" to "the quasi criminal, 'extraordinary action of contempt,'. . . ."

■ Used in its more restrictive sense, the word "process" refers to the means by which a court compels compliance with its demands. (*Lobrovich* v. *Georgison* (1956) 144 Cal.App.2d 567, 574 [301 P.2d 460].) The most encompassing statutory definition of this usage of judicial "process" refers to "all writs, warrants, summons, and orders of courts of justice, or judicial officers." (Gov. Code, § 26660, subd. (a); See also Gov. Code, § 22; Code Civ. Proc., § 17, subd. 6; Pen. Code, § 7, subd. 15.) A communication by court administrative personnel, even pursuant to general statutory authority and at the court's direction, is not the equivalent of any of the matters included in the broadest statutory definition of "process." Writs, warrants, and orders are issued on authority of a judge's signature; specific procedures for summons are statutorily prescribed (see § 225).

Only in the context of the tort of abuse of process have the courts extended the meaning of the term "process" to "encompass the entire range of 'procedures' incident to litigation." (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 104, fn. 4 [101 Cal.Rptr. 745, 496 P.2d 817].) But even within this broader definition, the scope of the word "process" has been extended to the abuse only of such powers as the taking of depositions and the sending of written interrogatories both of which are specifically authorized by statutes providing clear enforcement sanctions. (*Younger* v. *Solomon* (1974) 38 Cal.App.3d 289, 296-297 [113 Cal.Rptr. 113].)[3]

■ Considerations of judicial restraint counsel against expanding the use of criminal contempt sanctions for interference with court process to conduct interfering with or tending to frustrate essentially administrative functions of the court which do not directly affect a pending case. Accordingly we decline to extend the accepted and established meaning of "process" to apply to the instant factual context.

Petitioner's threat to distribute copies of the second questionnaire to any defense attorney handling a case in which he might be selected as a

---

[3]A jury commissioner has specific statutory power to require jurors to answer questions under oath. (§ 204c.) Petitioner's responses, however, were not given under oath.

Failure to attend or serve as a juror after being summoned constitutes a contempt of court (§ 1209, subd. 10). The maximum penalty for such willful failure of a trial juror to attend without reasonable excuse is a fine of $50 (§ 238).

juror does have the potential to affect adversely the course of justice in formal court proceedings. However, petitioner had not been summoned to serve as a juror in a particular case and his blanket attack on the judiciary charging local judges with a tendency unduly to favor those accused of crime necessarily had no impact on a pending case. Moreover, statements such as petitioner's are specifically excluded from the definition of contemptuous conduct by section 1209 as follows: "No speech or publication reflecting upon or concerning any court or any officer thereof shall be treated or punished as a contempt of such court unless made in the immediate presence of such court while in session and in such a manner as to actually interfere with its proceedings...."

Let a peremptory writ of prohibition issue directing the Superior Court for the County of Sacramento to refrain from enforcing its contempt order against petitioner or from taking any further proceedings in superior court No. 279004 other than to vacate the judgment of contempt and dismiss the order to show cause. The order to show cause issued herein, having served its purpose, is discharged.

Paras, J., and Blease, J., concurred.