STATE of Missouri,
Plaintiff-Respondent,

v.

Robert N. JOOS, Defendant-Appellant.

No. 14683.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 1, 1987.

Robert Joos, pro se.

William L. Webster, Atty. Gen., and Timothy W. Anderson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury has found defendant Robert N. Joos guilty of simulating legal process, as defined and denounced by § 575.130.1(2), RSMo 1978. His punishment has been assessed at confinement in the county jail for six (6) months; he has also been ordered to pay a fine of $400. He appeals.

The defendant challenges the sufficiency of the evidence to sustain the judgment of conviction. In assessing the sufficiency of the evidence, we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. The question is whether the evidence, viewed in a light most favorable to the State, is sufficient to support the verdict. *State v. Brown,* 660 S.W.2d 694, 698–99 (Mo. banc 1983); *State v. Story,* 646 S.W.2d 68, 72 (Mo. banc 1983). So viewed, the evidence was that on February 24, 1985, the defendant went to the residence of one George Bone and asked Bone to accompany him the following day to witness the service of some documents. The defendant told Bone that he, the defendant, "would be up most of the night doing some legal work" and that he wanted to serve the documents, or "papers," as soon as possible. Bone declined to act as a witness to service of the documents. Two or three days later, the defendant told Bone's wife that he had "beat [the prosecuting attorney] in court."

On February 26, 1985, the defendant entered the McDonald County Sheriff's office carrying some papers. He left the papers in the sheriff's office, stating that he wanted the papers served on Trooper M.L. Graham, a member of the Missouri State Highway Patrol. At the time, Graham was attempting to execute a warrant for the arrest of one Taren Wood. Wood had been convicted of a crime in Newton County and had subsequently "jumped bond."

The documents which the defendant wanted "served" on Trooper Graham bore

the correct style, caption and docket number of a civil suit which Taren Wood had instituted in the United States District Court for the Western District of Missouri, Southwestern Division. The first document purports to be an order of the District Court. Omitting formal parts, it reads:

> "That pursuant to errors of record, arrest of judgement/stay of execution is ordered, effective immediately; and dismissal of said judgement is in order. This judgement is under permanent arrest for the so stated errors of record."

This paper is dated February 25, 1985. It is signed by "Taren Wood, In Propria Persona," and was received in evidence as State's Exhibit 1.

Another writing which the defendant had delivered to Trooper Graham is a Summons, bearing the correct style and docket number of the case Taren Wood had filed in the United States District Court. The summons is in proper form to be issued and served pursuant to Fed.R.Civ.P. 4. It bears a signature purporting to be that of a deputy clerk. The summons is directed to Trooper Graham and was received in evidence as State's Exhibit 2.

Trooper Graham testified that on February 27, 1985, he was advised by Pat Attlesey, a McDonald County deputy sheriff, that Attlesey had papers for "service" on him. Exhibits 1 and 2—and other exhibits not before the court—were delivered to Graham. Graham doubted their authenticity, but decided to contact the prosecuting attorney and the Attorney General's office. It is inferable from Graham's testimony that these documents were called to the attention of the United States District Court in Kansas City. In addition, the State introduced a certified copy of an order of that court dated March 14, 1985, wherein the District Court found that the "arrest of judgement-stay of execution" order—here State's Exhibit 1—"sufficiently masquerades as a bona fide order of this court that it shall be stricken...." The tenor of this order, aside from the quoted

sentence, is that State's Exhibit 1 is a fabrication. Trooper Graham's description of the proceeding in district court was "that was all threw out of court in Kansas City, ... it [the 'stay order'] didn't amount to the paper it was written on, they said."

I

Because the defendant has insisted on representing himself in this court, we have given the sufficiency point careful attention. This is the defendant's appeal of right, *Ross v. Moffitt*, 417 U.S. 600, 615–17, 94 S.Ct. 2437, 2446–47, 41 L.Ed.2d 341, 353–55 (1974), and, as in any criminal prosecution, the defendant was entitled to have the State present evidence from which any rational trier of fact could find him guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).

The crime of simulating legal process was created when The Criminal Code was enacted in 1977. Laws of Mo. 1977, S.B. 60. Section 575.130, which defines and denounces that offense reads in material part as follows:

> "A person commits the crime of simulating legal process if, with purpose to mislead the recipient and cause him to take action in reliance thereon, *he delivers or causes to be delivered:*
>
> .    .    .    .    .
>
> (2) Any purported summons, subpoena *or other legal process* knowing that the process was not issued or authorized by any court." (Emphasis ours.)

In this case, the elements of the State's case were and the prosecution was obliged to show that: 1) with purpose to mislead the recipient and cause him to act thereon, 2) defendant caused to be delivered; 3) a purported summons, subpoena or other legal process knowing that the process was not issued or authorized by any court. The New Missouri Criminal Code—A Manual for Court Related Personnel § 20.13, p. 20–12 (1978).[1]

---

1. The comment to this section, as it appeared in the 1973 draft of The Proposed Criminal Code

indicates this section was based on Colo.Rev. State § 18-8-611 (misquoted in the comment)

■ We must first consider what is included in the word "process." The term "process" is not limited to "summons"; as we construe § 575.130, the word "process" is used as a general term and denotes the means whereby a court compels a compliance with its demands.[2] The purported order styled "Arrest of Judgement-Stay of Execution" is phrased as a command of the United States District Court, ordering those to whose attention it is brought to refrain from enforcing a judgment in any manner. The document is well within the meaning and import of the words "legal process" as used in § 575.130.

It is also to be noted that the first sentence of the statute does not refer to "service" of the simulated process, nor indicate that "service" in a manner prescribed by statute or rule is required. All the statute requires is delivery. The ordinary meaning of the verb "deliver" is simply to hand over or surrender possession to another. Ballentine's Law Dictionary, p. 329 (3d ed. 1969).

■ Was there, then, proof of a purpose to mislead or cause the recipient to take action in reliance upon the instrument entitled "Arrest of Judgement-Stay of Execution"? The natural and probable tendency of the instrument to influence action by the authorities must be judged by the content of the document itself rather than the special knowledge of the authorities. *Cf. United States v. Johnson*, 530 F.2d 52, 55 (5th Cir.1976), *cert. denied*, 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976). The tenor of the order is imperative and immediate. It reads something like a species of injunction. On its face it is attributable to the United States District Court and it was delivered with other documents purported-

ly issued by that court. The content of the document is such that a jury could have found it had a natural and probable tendency to mislead the recipient and cause him to act in reliance upon it.

It stands undenied that the defendant delivered the "Arrest of Judgement-Stay of Execution" to a deputy sheriff with instructions to "serve" the paper on Trooper Graham.

■ This brings us to a consideration whether there is substantial evidence of the third element of the crime, which is whether the document the defendant caused to be delivered was a "purported" document, which defendant knew was not issued or authorized by any court. To show that the instrument or order was false, the State asked the trial court to take judicial notice of an order of the District Court declaring, as we have noted, that the "Arrest of Judgement-Stay of Execution" "sufficiently masquerades as a bona fide order ... that it shall be stricken" and further holding that service of the order might constitute obstruction of the administration of justice. This order of the District Court was received in evidence.

When the justice of the case requires, courts can, and do, take notice of the record in other cases, and it is said that there are cases so clearly interdependent as to invoke a rule of judicial notice in one suit of the proceedings in another. *State v. Hawkins*, 582 S.W.2d 333, 334 (Mo.App. 1979). We perceive no unfairness in taking judicial notice of the District Court's finding in this case. The authenticity of the process in issue was a matter which required adjudication by the District Court; the two cases were interdependent and the

and S.H.A. Ch. 38 § 32–7. Our statute is broader than the Colorado statute, which reads:

"A person commits simulating legal process if he knowingly delivers or causes to be delivered to another a request for the payment of money on behalf of any creditor including himself which in form and substance simulates any legal process issued by any court of this state."

The Illinois statute reads:

"A person who issues or delivers any document which he knows falsely purports to be

or simulates any civil or criminal process commits a Class B misdemeanor."

The Illinois statute, it will be seen, requires no intent to induce another to act.

**2.** *McCollum v. Superior Court in and for Pima County*, 121 Ariz. 119, 588 P.2d 861, 862[1] (App. 1978); *Henderson v. Dudley*, 264 Ark. 697, 574 S.W.2d 658, 665[9] (1978); *Lister v. Superior Court of Sacramento County*, 98 Cal.App.3d 64, 159 Cal.Rptr. 280, 284[7, 8] (1979); 72 C.J.S. Process § 2, p. 589 (1987).

ends of justice required that the genuineness of the order be established as expeditiously as possible. Of course, judicial notice is merely a rule of evidence, and the defendant was at liberty to rebut the facts judicially noticed, *Mince v. Mince*, 481 S.W.2d 610, 615 (Mo.App.1972), but the order of the District Court declaring the process to be false was properly received, and constituted substantial evidence that the process delivered to Trooper Graham was simulated.

■ A final question is whether there is substantial evidence that the defendant caused the simulated process to be delivered "knowing" that the process was not issued nor authorized by any court. As a matter of general law, willfulness, intent and guilty knowledge may be proved by circumstantial evidence and frequently cannot be proved in any other way. *United States v. Hudson*, 717 F.2d 1211, 1213 (8th Cir.1983). In this case, there is much evidence that the defendant has, by some means, acquired knowledge of the general principles of the criminal law although much of that knowledge is grossly inaccurate. There is evidence that a short time before the bogus process was delivered to Trooper Graham, defendant was preparing some sort of legal document or documents. The defendant himself presented the simulated process for delivery. In our view, the evidence is sufficient to permit the inference that the defendant participated in preparing the bogus documents and therefore had actual knowledge that the process was not issued or authorized by any court. The evidence was sufficient to support the judgment of conviction. What we have said is sufficient to dispose of defendant's Points Sixteen (XVI), Seventeen (XVII), Eighteen (XVIII) and Nineteen (XIX).

## II

In his assignments of error numbered One (I) and Two (II), the defendant argues that the Circuit Court of McDonald County had no jurisdiction of the case. In the "argument" part of his brief, the defendant contends that "unlike a 'citizen of the United States,'" he claims infringement of his constitutional rights "via the Preamble, Art. I Sec. 10 and Art. VI, of the U.S. Constitution." In the "argument" part of his brief pertaining to Point Two (II) the defendant has set out seven (7) conditions which he seems to believe must exist before a circuit court may proceed to try a misdemeanor. The point may be given fair consideration by observing that Rule 23.01 provides that all misdemeanors may be prosecuted by indictment or information, and an information aptly charging defendant with violation of § 575.130, RSMo 1978, was filed in the Circuit Court of McDonald County on March 1, 1985. The offense charged was committed in McDonald County. Section 541.033, RSMo 1978, provided in terms that persons accused of committing offenses against the laws of this state shall be prosecuted in the county in which the offense is committed. Jurisdiction to try cases involving felonies, misdemeanors and infractions was vested in the circuit courts by § 541.020, RSMo 1978. The venue of the action was proper; the information was sufficient to advise the defendant of the charge against him. Points One (I) and Two (II) are without merit.

## III

■ The defendant's Point Three (III) is that he was denied due process of law because he was charged by information rather than by indictment. The provision of U.S. Const. Amend. V that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ..." has no application to state procedure and Mo. Const. Art. I, § 17, authorizes criminal prosecution by indictment *or* information. *State v. Crump*, 412 S.W.2d 490, 492[1, 2] (Mo.1967); *State v. Waller*, 382 S.W.2d 668, 671[4] (Mo.1964). The point is without merit.

## IV

■ Defendant's assignments of error Number Four (IV), Fourteen (XIV) and Fifteen (XV) focus upon his representation by counsel at his trial. The defendant claims: a) that he was denied counsel of his choice,

and b) that the Public Defender appointed to represent him was ineffective. The record with which we have been presented shows that defendant was arraigned upon a charge of stealing and upon the charge of simulating process on May 3, 1985. In open court, defendant was asked:

"THE COURT: Very well. Now, the next question I have for you is, do you have an attorney?

MR. JOOS: No.

THE COURT: Do you want an attorney?

MR. JOOS: No.

THE COURT: Do you insist on exercising your constitutional right to represent yourself?

MR. JOOS: I have the right to counsel of my choice, yes.

THE COURT: You do have the right to counsel of your choice if you hire that counsel; however, if you do not elect to hire the counsel, and if you are unable to get a lawyer, you're unable to—don't have the money or the finances to get an attorney, I can and will refer you to the Public Defender's Office. Now, what's your pleasure?

MR. JOOS: I certainly don't want an attorney. I will get a counsel of my choice."

Thereupon the misdemeanor (the present case) was set for trial and bond was fixed.

On June 13, 1985, the trial court decided to hold a hearing to determine whether the defendant "should be allowed to represent himself." We shall not synopsize the entire hearing; it is plain that the trial court was simply undertaking, once again, to ascertain whether the defendant wished to represent himself, and if he did, to make him aware of the dangers and disadvantages of self-representation, as required by *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The trial court properly followed the procedure suggested by our colleagues of the Eastern District in *State v. Quinn*, 565 S.W.2d 665 (Mo.App.1978) (Appendix).

During the course of this hearing, it became apparent that the defendant was well-educated, but not in the law. The defendant insisted that he was free to choose his counsel, even though the person he had in mind was "not a licensed attorney." Upon being pressed by the court about his decision to represent himself, defendant finally advised the court: "I am going to represent myself in propria persona with the aid of counsel of my choice." During the course of the hearing, defendant repeatedly demonstrated that he was wholly unfamiliar with the rules of criminal procedure in this state. Finally, the trial court assigned a Public Defender as standby counsel.

As we understand the first aspect of defendant's complaint about his representation, it is that counsel other than the layman he had in mind was appointed. As the point is presented in this court, we find no error prejudicial to the defendant. The defendant had no absolute right to a particular attorney, *State v. Kent*, 637 S.W.2d 119, 122 (Mo.App.1982), *cert. denied*, 459 U.S. 1115, 103 S.Ct. 749, 74 L.Ed.2d 968 (1983), and the appointment of standby counsel does not of itself infringe an accused's right to present his own defense. *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). So far as we are able to determine, standby counsel's performance did not violate the guidelines laid down in *McKaskle*.

The other aspect of defendant's complaint about his counsel seems to be that counsel was ineffective. Our primary inquiry is therefore whether an inspection of the whole record demonstrates: 1) that trial counsel failed to exercise that degree of skill, care and diligence to be expected of a reasonably competent attorney under similar circumstances, and 2) that defendant was prejudiced by trial counsel's performance. To establish the required prejudice, the record must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would probably have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Bannister v. State*, 726 S.W.2d 821, 824[1, 2] (Mo.App.1987). Our inspection of the record generates no belief

that the defendant was prejudiced in any respect by standby counsel's performance.

## V

In his assignments of error Number Seven (VII), Eight (VIII) and Ten (X), the defendant complains of the composition of the jury. Defendant's "argument" in aid of his Point Seven (VII) is difficult to follow, but it seems to be that he was entitled to be tried by an all-male jury which shared the same political and ethical convictions as the defendant. As a broad, general principle, it is true that a jury selection process which results in substantial underrepresentation of the accused's race, or of the identifiable group to which he belongs, violates the equal protection clause of U.S. Const. Amend. XIV. *See generally* W. LaFave and J. Israel, Criminal Procedure § 21.2(c), pp. 709–11 (1984). However, as with the "fair cross-section" requirement denial of equal protection requires proof of the underrepresentation of that distinctive or cognizable class to which the accused belongs. *See Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Cf. State v. Alexander,* 620 S.W.2d 380, 384–85[6–9] (Mo. banc 1981). There is no showing, only the assertion, that the defendant belongs to a distinctive, cognizable class in the constitutional sense, and we find no merit in these assignments of error.

## VI

Defendant's Point Eight (VIII) is that the trial court erred in denying defendant's challenge to the array because all the prospective jurors were residents of the state. The defendant argues that the prospective jurors were therefore parties to the action, sitting in judgment of their own cause as injured parties, and he was thereby denied a "fair trial in violation of due process of law in regard to [the] U.S. and Missouri Constitutions."

Contrary to defendant's assertion, the right to have jurors selected from the place at which the trial is to be held, sometimes called the right of "vicinage," was considered to be a right of great importance both at the common law and by the Founding Fathers.[3] So, both the Federal and State Constitutions preserve a right to vicinage. U.S. Const. Amend. VI guarantees an accused "a speedy and public trial, *by an impartial jury of the State and district wherein the crime shall have been committed*" and Mo. Const. Art. I, § 18(a), guarantees "*a speedy public trial by an impartial jury of the county.*"[4] (Our emphasis.) In view of the positive vicinage requirements of both the Federal and State Constitutions, it is difficult to see how defendant's jury could have been constituted of persons who were not residents of Missouri. Assignment of error Number Eight (VIII) is without merit.

## VII

Assignment of error Number Ten (X) is simply duplicative of defendant's Point Nine (IX), which is that the trial court unduly limited defendant's voir dire examination of the jury. As stated, Point Nine (IX) is that the court refused to permit the defendant to ascertain whether any members of the panel were Freemasons, Judaists or "Nazarites." The short answer to this contention is that religious affiliations do not constitute a qualification or disqualification for jury service. *State v. Betts,* 646 S.W.2d 94, 99 (Mo. banc 1983); *Rose v. Sheedy,* 345 Mo. 610, 611–12, 134 S.W.2d 18, 19[2, 3] (1939). We realize that Freemasonry does not constitute a "religion" in the same sense as Judaism and Christianity and Islam, but some correlation between being a Freemason and being able to follow the law as declared by the

---

3. *See* Blume, The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue, *43 Mich.L.Rev. 59, 60–67 (1944).*

4. While it is not necessary to our decision, we note there is respectable authority which seems to hold that the vicinage requirement of the Sixth Amendment is applicable to state prosecutions. *See* LaFave and Israel, op. cit. § 21.2, p. 716, and n. 65. *See also Zicarelli v. Gray,* 543 F.2d 466, 482 (3d Cir.1976). We do carefully note there was no request for a change of venue in this case.

trial court would have to be shown before questions about a prospective juror's affiliation with Freemasonry would become pertinent. *Rose v. Sheedy,* 345 Mo. at 611–12, 134 S.W.2d at 19. There is no showing or suggestion of any such correlation here, and the point is without merit.

## VIII

■ Defendant's assignment of error Number Eleven (XI) is that he was denied his constitutional right to a speedy trial. As the State concedes, there is no doubt that a criminal defendant is guaranteed a speedy trial by U.S. Const. Amend. VI and Mo. Const. Art. I, § 18(a), but as the State argues and this court has held, the constitutional right to a speedy trial is neither a guarantee of a prompt trial nor a trial instanter and there are many decisions holding that delays of many months or even years are not intolerable. *State v. Brooks,* 675 S.W.2d 53, 56 (Mo.App.1984). A criminal defendant's constitutional right to a speedy trial—the right defendant seems to be asserting here—attaches upon the filing of a formal indictment or the actual restraints imposed by arrest and holding to answer a criminal charge. *State v. Bolin,* 643 S.W.2d 806, 811[4, 5] (Mo. banc 1983). Here, the record indicates that an information was filed March 1, 1985. Defendant was not taken in custody until May 1985, or so the record indicates, and he was tried January 23, 1986. We are speaking, then, of a delay of a little more than 10 months. Resolution of the question whether this delay deprived the defendant of his constitutional right to a speedy trial requires consideration of four factors: 1) the length of the delay; 2) the reason for the delay; 3) defendant's assertion of his right to a speedy trial, and 4) prejudice to the defendant. The first factor, the length of the delay, is not determinative; if it is such as to be "presumptively prejudicial," further inquiry is prompted. *State v. Bolin,* 643 S.W.2d at 813–14. We shall assume the length of the delay was such as to prompt further inquiry.

The second factor to be taken in consideration is the reason for the delay. The defendant filed several motions which caused delay. In May 1985 defendant filed a motion for a change of judge; in June 1985, he sought another change of judge. In July 1985, the defendant sought to disqualify the prosecutor. In September 1985, defendant moved for a continuance. We cannot find any indication that the State was dilatory. We conclude that defendant himself was responsible for a substantial period of delay, and the second factor must be weighted against him.

The third factor to be considered is the defendant's effort to secure a speedy trial. Although an accused has no duty to bring himself to trial, failure to assert his right thereto makes it difficult to say he was denied a speedy trial. *State v. Bolin,* 643 S.W.2d at 815, quoting *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The defendant filed but one request for trial, speedy or otherwise. That motion was not filed until the day of trial, and this factor must also be weighted against the defendant.

The fourth factor to be considered, or inquiry to be made, is whether the defendant was prejudiced by the delay. The prejudice asserted by the defendant is that the delay: 1) allowed the prosecutor and the sheriff to contrive a felony charge and promote a "malicious publicity campaign against [him]"; and 2) that his defense was prejudiced. Neither of these claims is supported by the record. The only prejudice to the defense apparent from the record is that the defendant was unable to secure the presence of Taren Wood. Defendant admits Wood was subpoenaed as a witness as he requested. The subpoena was returned non est. No further process to secure Wood's presence was requested. We find no prejudice to the defendant's defense by reason of delay, as asserted. All the law required was that the officers charged with serving the subpoena expend a good faith effort to secure the service of process. *Achter v. State,* 545 S.W.2d 86, 87–88 (Mo.App.1976). That good faith effort is demonstrated by the record.

## 784

### IX

One further point must be addressed. We address it only upon the facts before us and only to the extent necessary to an orderly disposition of the appeal. By his assignment of error Number Thirty-three (XXXIII), the defendant asserts that he is immune from prosecution and conviction because he is an ambassador. We concede that by the modern law of nations, ambassadors and other public ministers are, in general, exempt from criminal arrest and prosecution. 4 Am.Jur.2d, Ambassadors and Consuls § 9, p. 93 (1962). Assuming, however, that if the defendant were possessed of diplomatic immunity the jurisdiction of the trial court and this court would be ousted by treaty and by federal statute,[5] the applicable treaty and statute premise diplomatic immunity upon recognition by the receiving state. Neither the defendant nor anyone else is able to assert diplomatic immunity unilaterally. Such status exists only when there is recognition of another state's sovereignty by the United States Department of State. Recognition by the *executive branch* of the Federal government is essential to establishing diplomatic status. *United States v. Lumumba*, 741 F.2d 12, 15[2–4] (2d Cir.1984), *cert. denied*, —— U.S. ——, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986). There is no record indication that any organization of which the defendant is a member has been recognized as a foreign state by the executive branch of the federal government nor that the Department of State has granted immunity status to the defendant. The point is without merit.

### X

The defendant has briefed a number of other points, some of which either overlap the points we have discussed or are repetitive. In all, the defendant briefed 33 assignments of error. These assignments of error have been given careful attention, but we find them to be without merit. Our constitutional mandate does not require us to discuss a meritless point simply because it has been made. *State v. Johnson*, 684

S.W.2d 584, 585–86[5] (Mo.App.1985); *State v. Trimble*, 654 S.W.2d 245, 259–60[32] (Mo.App.1983); *State v. Pugh*, 600 S.W.2d 114, 116[1] (Mo.App.1980). The judgment should be, and is, in all respects affirmed.

PREWITT, P.J., and MAUS, J., concur.

FLANIGAN, J., concurs in result in parts I and IV of the opinion; otherwise concurs.

---

**5.** The Vienna Convention on Diplomatic Relations, April 18, 1961, Art. IV, 23 U.S.T. 3227, and the corresponding statute, 22 U.S.C.A. §§ 254a–254e.