STATE of Missouri,
Plaintiff–Respondent,

v.

Thor DAVIS, Defendant–Appellant.

No. 14960.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 5, 1988.

---

Mark Rundel, Galena, for plaintiff-respondent.

Thor Davis, pro se.

GREENE, Presiding Judge.

Thor Eric Davis was court-tried and convicted of the class A misdemeanor of operating a motor vehicle when he did not possess a valid operator's license, § 302.020.1(2).[1] Davis was sentenced to one year in the county jail and fined $1,000. We affirm.

On appeal, Davis alleges that the statute requiring he obtain a valid operator's license, as a predicate to being allowed to operate a motor vehicle upon the public highways, violates his constitutional rights to freedom of religion and freedom to travel.

The facts of the case are not in dispute. On December 27, 1985, Trooper Allen B. Hines of the Missouri State Highway Patrol was directing traffic around a motor vehicle that was stalled on Highway 76 near the intersection of Highway 265 in Stone County, Missouri. Davis was driving

1. Unless otherwise indicated, all references to   statutes are to RSMo Supp.1984, V.A.M.S.

a 1963 Chevrolet pickup truck on Highway 76. As he approached the trooper, Hines recognized Davis, as he had previously stopped Davis for motor vehicle license violations. Hines directed Davis to stop, and asked to see his driver's license. Davis told Hines that he did not have a license, and did not need one because, "he was an ambassador of God, and had immunity." At trial, Davis said, "I freely admit that I do not have a driver's license. I will tell the Court that I do not intend to get a driver's license because I feel that it is against my religious beliefs." Davis declared he was merely "traveling in a conveyance" rather than "driving a motor vehicle." When asked by the judge whether he was claiming that he was not "turning the wheel, and operating the brake pedal, and operating the accelerator," Davis replied, "No, I'm not."

Section 302.020.1(2) provides, with certain exceptions not relevant here, that it is unlawful for any person to operate any motor vehicle, other than a farm tractor, upon any highway of this state unless he has a valid license as an operator. Operator, in the context used here, is defined in § 302.010(13) as "every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway." Section 302.010(9) defines a motor vehicle as "any self-propelled vehicle not operated exclusively upon tracks. . . ." In applying these statutory definitions to the facts in this case, it is evident that Davis, who is admittedly not a chauffeur, violated § 302.020.1(2) at the time and place in question. The only remaining issue is whether the state is estopped from enforcing the statute in question against Davis because of his religious beliefs.

We first address Davis' contention that his religious beliefs, as expressed in the Bible in Leviticus 18:3–5, Exodus 22:32–33, 34:10–17, and Deuteronomy 7:2, prohibit him from making any covenant or contract with any other god but God. He reasons that the state of Missouri is a god, and that an application for an operator's license is a contract, which he is prohibited from making, because such act would amount to the crime of treason against his government and his King (God).

We do not, and cannot, as part of our judicial function, attempt to adjudicate the controversy on the basis of any religious philosophy. The question is whether there is a compelling public interest, in insisting that all persons who operate a motor vehicle on public highways apply for and possess an operator's license, which overrides religious beliefs of some individuals.

■ The statute concerning the application for a Missouri motor vehicle operator's or chauffeur's license is § 302.171.[2] As the statute states, the information requested in the application is to aid the Director of Revenue in determining an applicant's qualifications to drive a motor vehicle, and is for the protection of persons travelling our highways. Since the operation of a motor vehicle upon public highways is a privilege, or at the most a qualified right, it is properly controlled by the exercise of state police power. *Breeze v. Goldberg*, 595 S.W.2d 381, 383 (Mo.App.1980). In the exercise of such police power, a state may require a person to be licensed as a condition precedent to operating a motor vehicle

---

2. Section 302.171 reads as follows:

"Application for a chauffeur's license or a motor vehicle operator's license shall be made upon an approved form furnished by the director. Every application shall state the full name, age, height, weight, color of eyes, color of hair, sex, residence, occupation and business address of the applicant, whether or not the applicant has been licensed as an operator or chauffeur, and, if so, when and by what state, and whether or not such license has ever been suspended or revoked, and, if revoked, or suspended, the date and reason for such suspension or revocation. The application shall also contain such information as the director may require to enable him to determine the applicant's qualification for driving a motor vehicle; and shall state whether or not the applicant has been convicted in this or any other state for violating the laws of this or any other state or any ordinance of any municipality, relating to careless driving, or driving while intoxicated, or failing to stop after an accident and disclosing his identity, or driving a motor vehicle without the owner's consent. The application shall contain a certification by the applicant as to the truth of the facts stated therein."

upon public highways. *Williams v. Schaffner,* 477 S.W.2d 55, 56 (Mo. banc 1972).

It is, therefore, necessary for us to examine the question of when the regulatory police power of the state should yield to the constitutional claim of denial of religious freedom. The United States Supreme Court has come down on both sides of the question. In *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), the court held that school children who regarded the flag of the United States as a "graven image" (Exodus 20:4–5) could not be compelled to salute the flag or to recite the pledge of allegiance. In *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), it was held that school children could not be compelled to attend accredited school past the eighth grade, if such practice was contrary to their religious views or those of their parents. In *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), it was held that a New Hampshire motorist could not be required to display the state motto, "Live Free or Die" on his automobile license plate, if such violated his religious beliefs.

However, the court in *Davis v. Beason,* 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637 (1890), held that the practice of polygamy, even though sanctioned by the religious beliefs of some, could be prohibited by statute. In *Jacobson v. Massachusetts,* 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905), the court held that a person could be required to submit to a state-mandated vaccination against smallpox, even though such procedures ran contrary to that person's religious views.

In attempting to reconcile these divergent views, the Supreme Court of Missouri, in *Penner v. King,* 695 S.W.2d 887, 889 (Mo. banc 1985), had this to say:

> Governmental scrutiny of the sincerity of one's religious belief is offensive to our tradition of individual rights. A balancing of interests is nonetheless necessary when a claim of individual religious belief is set up in opposition to the police power. If a statute serves an important public interest, even those with religious scruples may be required to comply.

> The Court, furthermore, is obliged to uphold legislative enactments, when challenged on constitutional grounds, unless the unconstitutionality is clearly demonstrated. The legislative power is plenary and residual, subject only to the limits of the federal and state constitutions. *State ex rel. Holekamp v. Holekamp Lumber Co.,* 340 S.W.2d 678 (Mo. banc 1960). This Court, therefore, must uphold a statute if there is any valid basis on which the legislature could have acted. It is no light matter to strike down an enactment of the people's representatives, or to excuse a particular person from compliance with a statute of general application.

> By our recent holdings the courts are obliged to examine legislation which is claimed to infringe on civil liberties, and to determine from the face of the legislative enactments the nature and quality of the public interest involved.

In *Penner,* the appellants sought to overturn decisions of the Circuit Courts of Barton and Clay Counties upholding the Director of Revenue's denial of their applications for driver's licenses. In their applications, appellants had refused to disclose their social security numbers in violation of § 302.181 RSMo Supp.1984. Among several reasons for nondisclosure, appellants alleged mandatory disclosure of their social security numbers infringed upon their religious freedom, because compliance with the requirement was inconsistent with their sincerely held religious belief that a social security number is developing into a mark that will be used as an "identifier," which applicants equated with the "mark of the beast" as foretold in the Bible, Revelation 13:16, 14:9–10. In holding that the statute, including the offending provision, constituted a valid exercise of legislative power that was not inconsistent with federal or state constitutional rights, our Supreme Court said:[3]

---

3. It is interesting to note that our legislature in its enactment of amendments to § 302.181 in

We have no difficulty in perceiving the purpose behind the legislative requirement. The automobile dominates our society and our economy. Motor vehicle operators are properly subject to competency examination and licensing. The identification of the operator is important. The social security number serves to distinguish a person from others with the same or similar names. The disclosure, then, might inhibit a person in obtaining or using a license fraudulently or improperly. The legislative scheme might be impeded if persons could simply opt out by asserting religious inhibitions. The director acted properly in denying an individual exemption to the defendants.

The state may justify an inroad on religious liberty by showing that the regulation is the least restrictive means of achieving a compelling state interest. *Thomas v. Review Board*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). Even if the requirement that the license show a social security number be considered an inroad, the state has shown ample justification. It is important for the state to identify drivers and to learn about a person's driving record in other states. To keep dangerous drivers off the road, driver's licenses may be denied to those who have bad driving records elsewhere. The use of the social security number provides the most efficient method of locating interstate driving records. It is apparent that the state has a compelling interest and no less restrictive means for accomplishing its purpose. The infringement on appellants' religious beliefs is justified.

*Penner v. King*, supra, 695 S.W.2d at 890.

■ While our legislature, by amendment, has exempted certain individuals because of their religious beliefs from having

their social security number or photograph on their driver's license, there is a great difference in not having the license contain this information as opposed to refusing to make application for a license. Davis contends he would be willing to pay the license fee and to take the examination, as a prerequisite to getting his license, but that is not enough. The application provides the means for ascertaining whether the granting of the license to an applicant would endanger the lives or property of others using the public highways. As such, the requirement that a person apply for and receive an operator's or chauffeur's license as a prerequisite to being allowed to operate a motor vehicle on public highways is a valid exercise of police power, and overrides the reliance of Davis on his religious beliefs as a means to avoid applying for an operator's license.

■ Davis next contends that he was not operating a motor vehicle, but was merely "travelling in a conveyance" when arrested, and therefore, he did not violate the statute. His reasoning for this premise that the statute in question is for the purpose of regulating commerce and has no application to individuals who are merely "travelling," is not based on any relevant statute or case precedent, and has no merit. Section 302.010(13), as previously noted, defines an operator as a person, not a chauffeur, "who is in actual physical control of a motor vehicle upon a highway." Davis concedes that he is not a chauffeur. Since Davis was in actual physical control of the pickup truck, he was operating a motor vehicle.

In his final argument, Davis contends that as a citizen of the Kingdom of God, he is an ambassador, entitled to diplomatic immunity.

1986 now provides in subsection 4 that the Director of Revenue "shall issue a license without a social security number to an applicant therefor, who is otherwise qualified to be licensed, upon presentation to the director of a certified statement of the circuit court of the county in which the applicant resides, stating that the applicant is a member of a specified religious denomination which prohibits the release or use of identification numbers by members as being

contrary to its religious tenets." In addition, subsection 5 of that statute provides that the director "shall issue a license without the photograph to an applicant therefor, who is otherwise qualified to be licensed, upon presentation to the director of a certified statement" that the applicant "is a member of a specified religious denomination which prohibits photographs of members as being contrary to its religious tenets."

■ Diplomatic immunity cannot be asserted unilaterally. Such status exists only when there is recognition of another state's sovereignty by the United States Department of State. *State v. Joos*, 735 S.W.2d 776, 784 (Mo.App.1987). There is nothing in the record to indicate that any organization of which Davis is a member has been recognized as a foreign state by the executive branch of the federal government, or that the Department of State has granted immunity status to Davis.

We do not question Davis' sincerity, or the validity of his religious beliefs. The state of Missouri, by making the licensing requirements in question, is not prohibiting Davis from expressing and practicing his religious beliefs, or from traveling throughout this land. If he wishes, he may walk, ride a bicycle or horse, or travel as a passenger in an automobile, bus, airplane or helicopter. He cannot, however, operate a motor vehicle on the public highways without applying for and possessing a valid operator's license.

Judgment affirmed.

CROW, C.J., concurs.

HOLSTEIN, J., concurs and files concurring opinion.

HOLSTEIN, Judge, concurring.

I concur fully in the majority opinion. I would add that Davis' brief on appeal does not contain a proper jurisdictional statement, it does not contain a fair, concise statement of the facts relevant to the questions presented, it does not contain points relied on which briefly and concisely state what actions or rulings of the court are sought to be reviewed and wherein and why such rulings are claimed to be erroneous, none of the authorities discussed in the argument portion of the brief are cited under the "points relied on," and the argument portion of the brief does not follow the order of the points relied on. Rule 30.06, V.A.M.R. When a party fails to comply with the rules relating to briefs, the court is justified in dismissing the appeal. Rule 30.09, V.A.M.R.

I join in excusing appellant's noncompliance with the rules relating to briefs because the precise question relating to whether requiring a license to operate a motor vehicle violates appellant's freedom of religion has not been addressed by this court and because appellant is not represented by an attorney.

Appellant's claims that he was not operating a motor vehicle and that he is entitled to diplomatic immunity as an ambassador of God border on the absurd. Such arguments divert judicial energies and time and, to that extent, erode the rights of others to timely disposition of claims having substance.

We have answered the questions presented here once. I would caution those who read this opinion not to assume that such blatant disdain for the rules will always be forgiven because an appellant has elected to be unrepresented by an attorney and because he believes the vehicle operator licensing laws violate his sincerely held religious convictions.