**STATE of Tennessee, Appellee,**

v.

**Robert G. LOUDON, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Jan. 27, 1993.

Petition to Appeal Denied June 1, 1993.

Charles W. Burson, Atty. Gen. & Reporter, Joel W. Perry, Asst. Atty. Gen., Nashville, John W. Pierotti, Dist. Atty. Gen., Terry Harris, Asst. Dist. Atty. Gen., Memphis, for appellee.

James V. Ball, Memphis, for appellant.

## OPINION

JONES, Judge.

The appellant, Robert G. Loudon, was convicted of driving a motor vehicle without a license, a Class B misdemeanor, by a jury of his peers. The trial court sentenced the appellant to pay a fine of $108, the amount set by the jury, and to serve thirty (30) days in the Shelby County Correctional Center.

The appellant has presented two issues for review. He contends:

I. Section 55–50–321(c)(1) of the Tennessee Code Annotated requiring a social security number for a driver's license application and renewal is unconstitutional in that it violates the Free Exercise Clause of the First Amendment of the United States Constitution as made applicable to the States by the Fourteenth Amendment and Article I, Section 3 of the Tennessee Constitution.

II. Whether, based on recent law passed by the Tennessee Legislature no longer requiring a social security number for the application and renewal of driver's license, such conviction may be overturned by application of such law retroactively.

The judgment of the trial court is affirmed.

On June 14, 1990, Officer Holly Cooper stopped the appellant for making an illegal left-hand turn. When Officer Cooper asked the appellant for his driver's license, he advised the officer that his license had expired; and he had not renewed it. Cooper prepared a traffic citation and presented it to the appellant. When he refused to sign the citation, he was arrested and transported to the Shelby County Jail. It was stipulated that the appellant did not possess a valid driver's license when he was stopped by Cooper.

The appellant advised Cooper that he could not be arrested because her God was not as big as his God. He referred to her as "an agent of the socialistic government and he felt that it was that type of government that was trying to brand him with this mark." The appellant furnished Cooper with a letter that he had written to the Department of Safety regarding the renewal of his driver's license. The letter, dated December 29, 1988, advised the Department of his change of address and then stated:

I was told to contact you by one Michelle Thomas from the Tennessee Department of Safety (Highway Patrol) office on 6348 Summer in Memphis. She referred me to you. Here is the situation:

Michelle Thomas told me that you would not renew my license without a Socialist Surveillance Number (SSN, sometimes miscalled a "Social Security Number"). That is incorrect; it is illegal for you or

any one else to deny me a renewal of my operator license because I neither have nor will get a Socialist Surveillance Number; and so to do will be a violation of Federal laws both civil and criminal, regardless of any "Laws" you may claim to be acting under color of.

I am hereby giving constructive notice of this to you and all of you.

I do not have a SSN because that number is now becoming the mark of the beast against which we are warned in the Bible at Revelation 13:16–18, 14:11, and other places. I have committed my life to follow the Lord Jesus, Christ, and I cannot permit myself to be defiled with your number, as it would surely defile me.

I appeal to you as a loyal citizen to dutiful public servant that you will do your duty and make certain that I have no more trouble from you or your office in renewing my operator's license.

The Department of Safety advised the appellant that it would not renew his license if he persisted in his refusal to furnish the Department with his social security number.

The appellant has possessed a social security number for several years. According to the appellant, the Department of Defense abandoned its identification number and adopted the social security number as its identification number while he was on active duty in the United States Army. The Army obtained a social security number for the appellant in contemplation of the change in identification numbers. Moreover, social security taxes are deducted from the appellant's salary by his employer, Memphis State University. The appellant admits that the University may use his social security number to maintain certain records. The appellant does not object to the use of his social security number for this purpose.

In summary, the appellant had a social security number when he sought to have his driver's license renewed notwithstanding his statement to the Department of Safety that he did not have such a number. The appellant's destruction of his social security card did not remove his social security number from the records of the United States Government.

## I.

The First Amendment to the United States Constitution provides in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." This provision, known as the Free Exercise Clause, is enforceable against the states through the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1217 (1940); *Paty v. McDaniel,* 547 S.W.2d 897, 901–902 (Tenn.1977), *rev'd., McDaniel v. Paty,* 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978).

Since the Free Exercise Clause guarantees that a citizen of this Nation can believe and profess the religious doctrine of the citizen's choice, "[t]he door [of this Clause] stands tightly closed against any governmental regulation of religious *beliefs* as such." *Sherbert v. Verner,* 374 U.S. 398, 402, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965, 969 (1963) (Emphasis added). Thus, a government can neither compel an affirmation of a repugnant belief, *Torcaso v. Watkins,* 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961), punish the expression of religious doctrines it believes to be false, *United States v. Ballard,* 322 U.S. 78, 86–88, 64 S.Ct. 882, 886–887, 88 L.Ed. 1148 (1944), employ its taxing powers to inhibit the dissemination of particular religious views, *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), impose special disabilities on the basis of religious views or religious status, *McDaniel v. Paty,* 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978), nor lend its power to one side or the other in controversies over religious authority or dogma. *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 708–725, 96 S.Ct. 2372, 2380–2388, 49 L.Ed.2d 151, 162–172 (1976). However, the United States Supreme Court has consistently held that "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and

neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).' " *Employment Div. Dept. of Human Resources v. Smith,* 494 U.S. 872, 879, 110 S.Ct. 1595, 1600, 108 L.Ed.2d 876, 886 (1990), quoting *United States v. Lee,* 455 U.S. 252, 263, n. 3, 102 S.Ct. 1051, 1058, n. 3, 71 L.Ed.2d 127, 136, n. 3 (1982) (Stevens, J., concurring). As the Court said in *Minersville School Dist. Bd. of Educ. v. Gobitis,* 310 U.S. 586, 594–595, 60 S.Ct. 1010, 1012–1013, 84 L.Ed. 1375, 1379 (1940):

> Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs. The mere possession of religious convictions which contradict the relevant concerns of a political society does not relieve the citizen from the discharge of political responsibilities. (footnotes omitted).

In *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), the Court held that a mother could be prosecuted under the child labor laws for using her children to dispense literature regardless of her religious motivation. In *Braunfield v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961) (plurality opinion), the Court upheld Sunday-closing laws notwithstanding a claim that the laws burdened the religious practices of citizens whose religious tenets required them to refrain from work on other days of the week. In *Gillette v. United States,* 401 U.S. 437, 461, 91 S.Ct. 828, 842, 28 L.Ed.2d 168, 187 (1971), the Court sustained the military selective service system even though there was a claim that the system violated the Free Exercise Clause because it conscripted citizens who opposed a particular war on religious beliefs. In *United States v. Lee,* 455 U.S. at 258–261, 102 S.Ct. at 1055–1057, 71 L.Ed.2d at 133–135, the Court ruled that the Amish were required to collect and pay social security taxes even though the Amish faith prohibited participation in governmental support programs. In *Hernandez v. Commissioner,* 490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989), the Court rejected a claim that the payment of federal income tax made the citizen's religious activities more difficult.

In the landmark case of *Sherbert v. Verner, supra,* the United States Supreme Court ruled that a person must establish that the religious beliefs asserted by a citizen constitute a "religion within the meaning of the First Amendment." If this is shown, the state must demonstrate that there is a compelling state interest that justifies a substantial infringement of the litigant's First Amendment rights. However, the Court has subsequently held that the compelling state interest prong is not applicable when the accused seeks an exemption from an act that is designated as a criminal offense. *Employment Div. Dept. of Human Resources v. Smith, supra.* The Court said in *Smith:*

> We conclude today that the sounder approach, and the approach in accord with the vast majority of our precedents, is to hold the [compelling state interest] test inapplicable to such challenges. The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, "cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development...." To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is "compelling"—permitting him, by virtue of his beliefs, "to become a law unto himself," ...—contradicts both constitutional tradition and common sense. (citations and footnotes omitted).

494 U.S. at 885, 110 S.Ct. at 1603, 108 L.Ed.2d at 889–890. In *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878), the Court asked the rhetorical question: "Can a man excuse his practices [of polygamy] to the contrary because of his religious belief?" The Court answered the question in the following manner: "To permit this would be to make the professed doctrines of religious belief superior to the law of the

land, and in effect to permit every citizen to become a law unto himself." 98 U.S. at 166–167.

In summary, the Tennessee General Assembly can grant a nondiscriminatory exception from complying with the requirement in question. However, the United States Constitution does not mandate such an exemption in this case.

◼◼◼◼ Assuming *arguendo* that *Sherbert* applies in this case, the appellant is not entitled to an exemption from the applicable statute. There is a compelling state interest which justifies the statutory requirement that the driver's social security number appear on the face of the license issued by the Department of Safety. *Penner v. King*, 695 S.W.2d 887 (Mo.1985) (en banc).

In *Penner*, a case strikingly similar to the case at bar, a state statute required in part that "[a]ll [driver's] licenses shall bear the licensee's social security or tax identifying number, if the licensee has one, and if not, then a number assigned to the licensee by the director...." The appellants were denied driver's licenses when they refused to provide their social security numbers to the state agency authorized to issue a driver's license. The appellants refusals were likewise predicated upon the "mark of the beast" biblical provisions. In holding that the agency properly refused to issue licenses to the appellants, the court said:

> The Court ... is obliged to uphold legislative enactments, when challenged on constitutional grounds, unless the unconstitutionality is clearly demonstrated. The legislative power is plenary and residual, subject only to the limits of the federal and state constitutions.... This Court, therefore, must uphold a statute if there is any valid basis on which the legislature could have acted. It is no light matter to strike down an enactment of the people's representatives, or to excuse a particular person from compliance with a statute of general application.

> \* \* \* \* \* \*

> We have no difficulty in perceiving the purpose behind the legislative requirement. The automobile dominates our society and our economy. Motor vehicle operators are properly subject to competency examination and licensing. The identification of the operator is important. The social security number serves to distinguish a person from others with the same or similar names. The disclosure, then, might inhibit a person in obtaining or using a license fraudulently or improperly. The legislation scheme might be impeded if persons could simply opt out by asserting religious inhibitions. The director acted properly in denying an individual exemption to the defendants.

> The state may justify an inroad on religious liberty by showing that the regulation is the least restrictive means of achieving a compelling state interest.... Even if the requirement that a license show a social security number be considered an inroad, the state has shown ample justification. It is important for the state to identify drivers and to learn about a person's driving record in other states. To keep dangerous drivers off the road, driver's licenses may be denied to those who have bad driving records elsewhere. The use of the social security number provides the most efficient method of locating interstate driving records. It is apparent that the state has a compelling interest and no less restrictive means for accomplishing its purpose. The infringement on appellants' religious beliefs is justified.

695 S.W.2d at 888–890. (Citations omitted).

This Court concludes that the statutory provision requiring every applicant for a new driver's license or the renewal of a valid license to furnish the Department of Safety with his or her social security number was constitutional; and the appellant was not entitled to an exemption from this statutory provision.

## II.

Article I, Section 3 of the Tennessee Constitution, like the Free Exercise Clause, protects the citizens of this State from laws which would restrict their respective rights

to practice the religion of their choice. This constitutional provision provides:

> That all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; that no man can of right be compelled to attend, erect, or support any place of worship, or to maintain any minister against his consent; that no human authority can, in any case whatever, control or interfere with the rights of conscience; and that no preference shall ever be given, by law, to any religious establishment or mode of worship.

The Supreme Court of this State has said that this provision is "practically synonymous" with the Free Exercise Clause contained in the First Amendment to the United States Constitution. *Carden v. Bland*, 199 Tenn. 665, 672, 288 S.W.2d 718, 721 (1956).

The appellate courts of this State have held that "the constitutional guarantee of freedom of religion is not absolute." *Goodwin v. Metropolitan Bd. of Health*, 656 S.W.2d 383, 389 (Tenn.App.1983) (governmental agency's prohibition of promoting religious beliefs or distributing religious matter to a client did not violate the constitutional guarantee of freedom of religion). *See Hardin v. State*, 188 Tenn. 17, 216 S.W.2d 708, 710 (1948) (conviction under a statute which makes it "unlawful for any person or persons to display, exhibit, handle or use any poisonous or dangerous snake or reptile in such a manner as to endanger the life or health of any person" did not violate the defendant's constitutional right to the free exercise of religion notwithstanding the fact that the snakes were used in a religious service); *State ex rel. Swann v. Pack*, 527 S.W.2d 99 (Tenn. 1975), *cert. denied*, 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976) (the handling of poisonous snakes and the taking of strychnine can be perpetually enjoined notwithstanding the fact these practices are part of a religious service); *Gaskin v. State*, 490 S.W.2d 521 (Tenn.1973) (conviction for the manufacture of marijuana not barred on the ground that it interfered with the free exercise of the defendant's religious beliefs). However, the appellate courts

have not been asked to address the specific issue raised by the appellant.

■ The citizens of this State should not be permitted the right of refusal to comply with a neutral law of general applicability that is not aimed at the promotion or restriction of religious convictions. If such were the case, the proposed doctrines of religious belief would become superior to the laws of this State. Moreover, citizens would become a law unto their selves because they would only comply with the laws and statutory regulations of their choice. Citizens could refuse to comply with the balance of the laws and statutory regulations on the ground the laws either promoted or restricted religious convictions. This would create chaos in every agency responsible for enabling or enforcing laws.

■ Requiring a social security number to appear on the face of a driver's license is a neutral law of general applicability; and it is not aimed at the promotion or restriction of religious convictions. In addition, it has a very valid purpose. A law enforcement or other agency can make an accurate identification of the person who has been issued the license. More particularly, law enforcement officers can determine whether a particular driver has an outstanding warrant, has a prior criminal record, or is wanted by a law enforcement agency for questioning regarding the commission of a criminal offense. Such specificity of identification is also beneficial to the driver. It prevents a misidentification and possible confinement until the misidentification is actually discovered by a law enforcement agency.

The statutory provisions which required every applicant for a new driver's license or the renewal of a valid license to furnish the Department of Safety with his or her social security number passes Tennessee constitutional muster; and the appellant was not entitled to an exemption from this statutory provision for the reasons set forth in Section I and II of this opinion.

### III.

The statute requiring that the social security number of a driver must be provided in the application for or renewal of a driver's license was subsequently amended by the General Assembly. *See* Tenn.Code Ann. § 55–50–321(c)(1) (Supp.1992); Public Acts, 1992 ch. 791, § 9. The appellant contends that the amendment should be given retroactive application. He argues that this change in the statute mandates that his conviction be reversed and the prosecution against him dismissed.

As the appellant concedes in his brief, an act passed by the General Assembly is to be given prospective application unless there is either a plainly expressed or a necessarily implied intent that the Act is to be applied retroactively. *Electric Power Bd. of Metropolitan Gov't. v. Woods,* 558 S.W.2d 821, 825 (Tenn.1977); *Woods v. TRW, Inc.,* 557 S.W.2d 274, 275–276 (Tenn. 1977); *Cates v. T.I.M.E., DC, Inc.,* 513 S.W.2d 508, 510 (Tenn.1974). In the case *sub judice,* the appellant has failed to refer this Court to language in the Act that either plainly expresses or necessarily implies that the General Assembly intended that the amendment is to be applied retroactively. After reviewing the act, this Court is of the opinion and finds that there is no language contained in the act which requires the statute, as amended, to be applied retroactively.

This issue is without merit.

DWYER and SUMMERS, JJ., concur.