Mark D. Pfeiffer, Presiding Judge
Mr. William White ("White") appeals the judgment of the Circuit Court of Johnson County, Missouri ("trial court"), following a jury trial convicting him of the class D felony of driving without a valid license, third or subsequent offense. White argues on appeal that section 302.020[1] violates the United States Constitution, that the trial court lacked jurisdiction, and that he had a valid driver's license issued by the "Pembina Nation Little Shell Band of North America" which the State of Missouri was obliged to recognize as a valid license of a "nonresident ... issued to him in his home state or country[.]" We affirm.
Factual and Procedural Background
White was charged by amended information with the class D felony of driving without a valid license in violation of section 302.020, in Johnson County, Missouri, on November 14, 2015, by knowingly operating a motor vehicle on a highway during a time when he did not have a valid license. The information classified the charged crime as White's third or subsequent offense based upon two prior convictions for the same crime in 2013.
A transcript of White's trial has not been deposited with this court and thus is not part of the record on appeal.[2] The jury found White guilty of driving without a valid license. The trial court found that White had two prior convictions for driving without a valid license and followed the jury's recommendation, sentencing White to two days in the Johnson County Jail.
Subsequently, White filed a "Declaration of Mistrial," which alleges the same arguments as those contained in his appeal. The trial court denied relief to White pursuant to White's "Declaration" and this appeal follows.
Analysis
White appeals pro se and his appellate brief contains briefing deficiencies in violation *114 of Rule 84.04.[3] Though we exercise our discretion not to dismiss this appeal, the deficiencies with White's briefing are numerous and it would be well within our discretion to dismiss this appeal.
White argues that section 302.020 violates the United States Constitution, "as used against this Tribal Nation." We disagree. First, White is without standing to challenge the constitutionality of the statute.
Even assuming for the sake of argument that White's documentation sufficiently proves him to be a member of the "Pembina Nation Little Shell Band of North America," this group is not federally recognized. Neal v. Arizona , No. CIV 07-8025-PCT-SMM, 2007 WL 2702002, at *2 (D. Ariz. Sept. 14, 2007). Congress enacted the Federally Recognized Indian Tribe List Act of 1994 ("List Act"), Pub. L. No. 103-454, 108 Stat. 4791 (1994), which provided that:
Indian tribes may be recognized by: (1) an "Act of Congress;" (2) "the administrative procedures set forth in part 83 of the Code of Federal Regulations[;]" or (3) "a decision of a United States court." Pub. L. No. 103-454, § 103(3), 108 Stat. 4791; see also United Tribe of Shawnee Indians v. United States , 253 F.3d 543, 547-48 (10th Cir. 2001). A recognized tribe is placed on the DOI's "list of recognized tribes[.]" 25 U.S.C. §§ 479a(3), 479a-1 ; 25 C.F.R. § 83.5(a).
Cherokee Nation of Okla. v. Norton , 389 F.3d 1074, 1076 (10th Cir. 2004). The List Act further explains that:
the Secretary of the Interior is charged with the responsibility of keeping a list of all federally recognized tribes; ... the list published by the Secretary shall be accurate, regularly updated, and regularly published ...; and ... the list of federally recognized tribes which the Secretary publishes should reflect all of the federally recognized Indian tribes in the United States which are eligible for the special programs and services provided by the United States to Indians because of their status as Indians.
Pub. L. No. 103-454, § 103(6)-(8).
Pembina Nation is not on the list maintained by the Secretary of the Interior. Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 82 Fed. Reg. 4915-02 (Jan. 17, 2017). Absent federal recognition, a tribe "has no legal relationship with the federal government and lacks the federally sanctioned authority to function legally and politically." United States v. White , No. 07-00395-01-CR-W-HFS, 2008 WL 4816987, at *3 (W.D. Mo. Oct. 31, 2008) (quoting Neal v. Arizona , No. CIV 07-8025-PCT-SMM, 2007 WL 1876379, at *3 (D. Ariz. June 27, 2007) ).
Standing is a prerequisite to challenge the constitutionality of a statute. State v. Stottlemyre , 35 S.W.3d 854, 861 (Mo. App. W.D. 2001). A litigant must be adversely affected by the statute he wishes to challenge in order to have standing to do so. Id. For White to have standing to challenge section 302.020, he must show how the statute applies to the facts of his case and adversely affected him. As such, White, even if a member of the Pembina Nation, does not have standing to argue that section 302.020 violates the United States Constitution as applied to a Tribal Nation, because the Pembina Nation itself is not recognized as a Tribal Nation. In other words, because White is not a member of a federally recognized Tribal Nation, he does not have standing to argue that section 302.020 violates the Constitution as applied to a Tribal Nation.
*115 We also note, ex gratia , that section 302.020 is a reasonable exercise of the state police power. "The legislative power is plenary and residual, subject only to the limits of the federal and state constitutions." Penner v. King , 695 S.W.2d 887, 889 (Mo. banc 1985) (citing State ex rel. Holekamp v. Holekamp Lumber Co. , 340 S.W.2d 678 (Mo. banc 1960) ). This Court "is obliged to uphold legislative enactments, when challenged on constitutional grounds, unless the unconstitutionality is clearly demonstrated." Id.
Section 302.020 provides that it is unlawful for any person to operate any vehicle upon any highway in Missouri unless the person has a valid license. It is well-settled that a driver's license is not a vested right, but rather "no more than a personal privilege." Vandewiele v. Dir. of Revenue , 292 S.W.3d 397, 403 (Mo. App. W.D. 2009) (quoting Smyser v. Dir. of Revenue , 942 S.W.2d 380, 382 (Mo. App. W.D. 1997) ). The police power of a state is "the power of the legislature to make such regulations relating to personal and property rights as appertain to the public health, the public safety, and the public morals." Damon v. City of Kansas City , 419 S.W.3d 162, 184 (Mo. App. W.D. 2013) (quoting City of Kansas City v. Jordan , 174 S.W.3d 25, 40 (Mo. App. W.D. 2005) ). While the police power of the state is broad, it is not unlimited and cannot lessen constitutional protections. Id. "The police power is limited by: (1) the rights guaranteed by the Constitution, (2) the necessity of a legitimate public purpose, and (3) a reasonable exercise of the power." President Riverboat Casino-Mo., Inc. v. Mo. Gaming Comm'n , 13 S.W.3d 635, 641 (Mo. banc 2000) (internal citations omitted).
As a driver's license is a privilege and not a right, in the reasonable exercise of state police power, it is properly controlled via the statutory requirement that a person be licensed as a condition precedent to operating a motor vehicle upon public highways. State v. Davis , 745 S.W.2d 249, 250-51 (Mo. App. S.D. 1988) (citing Williams v. Schaffner , 477 S.W.2d 55, 56 (Mo. banc 1972) ). Section 302.020's requirement that a driver is required to possess a valid driver's license to operate a vehicle on Missouri highways is well within the constitutional limits on the reasonable exercise of the legislative police power to regulate personal rights appertaining to public safety, which is its legitimate public purpose.
Accordingly, both procedurally and substantively, White's constitutional arguments fail.
White next contends that the trial court was without jurisdiction because of his claim that he is an Indian and the United States has jurisdiction of all cases affecting states versus Indian Tribal people. We disagree.
The United States Constitution gives the United States Courts jurisdiction over "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority[.]" Art. III, § 2, cl. 1. White bases his jurisdictional argument on this provision and an 1863 treaty between the United States and the Pembina Nation. 13 Stat. 667 (Oct. 2, 1863). The treaty is unavailing to White's jurisdictional claim. As explained by another court:
Defendant bases his argument on an 1863 Treaty entered between the Pembina Tribe and the United States.... The Treaty says nothing about the ability of tribal members to cross the borders of the United States freely and without compliance with United States law. Article 4 of the Treaty does state that members of the Tribe "shall not be held *116 liable to punishment for past offences," but nothing in the Treaty suggests that tribal members are immune from liability for post-Treaty crimes committed off the reservation.
United States v. Stowbunenko-Saitschenko , No. CR 06-0869-PHX-DGC, 2007 WL 865392, at *2 (D. Ariz. Mar. 20, 2007).
Furthermore, setting aside the issue (discussed above) regarding the lack of federal recognition of the Pembina Nation, it is clear that White subjected himself to the laws of the state of Missouri (and enforcement thereof) when he left the territory of the Pembina Nation and entered into the jurisdiction of Missouri. Therefore:
[E]ven if the Court were to accept the defendant's assertion that he is a member of a sovereign nation, that fact would not relieve him of criminal liability for violations of United States law committed within the Court's jurisdiction. Any tribal sovereignty belonging to the Pembina Tribe simply does not extend to shield [the defendant] from the legal consequences of [his] own private off-reservation activities.
United States v. White , No. 07-00395-01-CR-W-HFS, 2008 WL 4816987, at *6 (W.D. Mo. 2008) (quoting Stowbunenko-Saitschenko , 2007 WL 865392, at *2 (internal quotation marks omitted)).
The trial court had personal jurisdiction in White's case. As the Missouri Supreme Court explained in J.C.W. ex rel. Webb v. Wyciskalla :
personal jurisdiction refers quite simply to the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests. Since Pennoyer v. Neff , 95 U.S. 714, 24 L.Ed. 565 (1877), the power of a state's courts over persons within and without the territory of the state has been a matter of due process of law under the Fourteenth Amendment to the United States Constitution. Even before Pennoyer , the power of the state courts to exercise jurisdiction over persons within the state and the interests of persons in property within the state was unquestioned.
275 S.W.3d 249, 253 (Mo. banc 2009) (internal citations omitted). And, as to the topic of subject matter jurisdiction:
Subject matter jurisdiction, in contrast to personal jurisdiction, is not a matter of a state court's power over a person, but the court's authority to render a judgment in a particular category of case....
[T]he subject matter jurisdiction of Missouri's courts is governed directly by the state's constitution. Article V, section 14 sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that "[t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal. Such courts may issue and determine original remedial writs and shall sit at times and places within the circuit as determined by the circuit court." (emphasis added.)
Id. at 253-54 (footnote omitted).
Applying these principles to the present case makes simple the task of determining jurisdiction. Here, White was at all relevant times a "person[ ] within the state[,]" and hence the trial court had personal jurisdiction. The State's prosecution of White for violation of section 302.020 was a criminal case; thus, the trial court had subject matter jurisdiction.
Finally, White argues that the State of Missouri is obligated to recognize his driver's license issued by the "Pembina Nation Little Shell Band of North America" as a valid license of a "nonresident ... issued to him in his home state or country"
*117 under the exemptions of section 302.080. Section 302.080 provides certain exemptions to the requirement of section 302.020 that a person operating a vehicle in Missouri have a valid license. White claims that because the United States has a "government-to-government relationship" with "each Indian tribe[,]" the exemptions of section 302.080 for nonresidents who have "a valid license issued to him in his home state or country" should apply to him.[4]
As noted previously, the "Pembina Nation Little Shell Band of North America" is not federally recognized. While federally recognized Indian Tribes possess the sovereign authority to make motor vehicle titling and registration regulations, a traditional government function and "an undeniable incident of tribal sovereignty," Prairie Band Potawatomi Nation v. Wagnon , 476 F.3d 818, 827 (10th Cir. 2007), White's cited authority on the matter involves federally recognized groups and titling and registration: Prairie Band Potawatomi Nation v. Wagnon , 402 F.3d 1015 (10th Cir.), vacated , 546 U.S. 1072, 126 S.Ct. 826, 163 L.Ed.2d 703 (2005) ; Prairie Band of Potawatomi Indians v. Pierce , 253 F.3d 1234 (10th Cir. 2001). Here, on the other hand, we are faced with a case involving a member of an unrecognized band of individuals, as opposed to a tribe, traveling on state land, as opposed to land designated as a reservation.
Again, we note that absent federal recognition, a tribe "has no legal relationship with the federal government and lacks the federally sanctioned authority to function legally and politically." White , 2008 WL 4816987, at *3 (quoting Neal , 2007 WL 1876379, at *3 ). As such, the Pembina Nation is without authority to issue driver's licenses that the State of Missouri would be obligated to recognize as valid for the operation of vehicles on Missouri highways pursuant to section 302.020 and/or section 302.080. See id.
Because the Pembina Tribe is not federally recognized and thus "lacks the federally sanctioned authority to function legally and politically," the State of Missouri is not obligated to grant reciprocity to an alleged Pembina driver's license in the way it would to nonresidents who have "a valid license issued to him in his home state or country" under the exemptions of section 302.080.
White's points on appeal are denied.
Conclusion
The judgment of the trial court is affirmed.
Lisa White Hardwick and Edward R. Ardini, Jr., Judges, concur.

All statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2014 Noncumulative Supplement.

It is the responsibility of the appellant to prepare and file with the appellate court the transcript of the hearing. Rule 30.04(c)(1). "The record on appeal must contain all of the proceedings necessary to a determination of the questions presented for decision." Bruce v. State , 998 S.W.2d 91, 93 n.1 (Mo. App. W.D. 1999) (internal quotation marks omitted). "Rule 30.04(a) mandates inclusion of the trial transcript in the record on appeal and does so for a reason-meaningful appellate review of material issues in dispute on appeal requires a transcript relating to the issues raised." State v. Barber , 391 S.W.3d 2, 6 (Mo. App. W.D. 2012). Matters omitted from the record on appeal will not be presumed to be favorable to the appellant. Bruce , 998 S.W.2d at 93 n.1. Moreover, "such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appeal." City of Kansas City v. Cosic , 540 S.W.3d 461, 464 (Mo. App. W.D. 2018).

All rule references are to I Missouri Court Rules-State 2018.

White again refers to the earlier discussed treaty from 1863 in support of his argument that Missouri is obligated to grant reciprocity to his alleged Pembina driver's license. The treaty is unavailing to White's claim in this regard for the same reasons elucidated in our discussion of his jurisdictional argument.